**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **CESAR VAZQUEZ,** | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. L – 06 – cv – 94 |
| | § | |
| | § | |
| **LAREDO TRANSIT MANAGEMENT,** | § | |
| **INC.,** | § | |
| *Defendant.* | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant's Motion for Summary Judgment.  [Dkt. No. 28].[1] After duly considering the motion, response, submitted evidence, and applicable law, the motion for summary judgment is GRANTED.

**I.  BACKGROUND**

This is an employment discrimination case.  Plaintiff Cezar Vazquez ("Vazquez") alleges Defendant Laredo Transit Management, Inc. ("LTM") discriminated against him because he suffers from diabetes and because of his age.  Vazquez contends LTM violated the Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA") when it terminated his employment.

---

[1]  "Dkt. No." refers to the docket number entry for the Court's electronic filing system.  The Court will cite to the docket number entries rather than the title of each filing.

1

### A.  Factual Background

Vazquez was born on October 26, 1935, and began working for LTM as a bus driver/operator in 1977.  [Dkt. No. 1 at 1; Dkt. No. 31, Ex. 6 at 4].  On May 28, 2003, Vazquez suffered a non-work related illness.  Pursuant to a collective bargaining agreement, LTM granted Vazquez automatic leave of one year.[2]  The leave of absence was without pay and was scheduled to end May 29, 2004.  [Dkt. No. 28, Ex. 5 at 3].  During the leave of absence, Vazquez remained employed in his position as a bus driver, but did not perform any services for LTM.  *Id.*  According to LTM,  during Vazquez's leave of absence, it continued paying several employment benefits such as health insurance, disability income insurance, dependent health care insurance, and sick leave.  *Id.* at 4.

On May 4, 2004, Robert J. Garza ("Garza"), LTM's Assistant General Manager, sent Vazquez a letter stating that Vazquez's leave would expire May 29, 2004.  [Dkt. No. 28, Ex. 8 at 2].  Should Vazquez be unable to return by the prescribed date, Garza requested from Vazquez medical probability about when he could return to work on a full-time basis.  Vazquez was given until May 21, 2004, to provide the requested information.  *Id.*

On May 19, 2004, Vazquez had a bypass graft on his left leg to improve circulation to his foot.  [Dkt. No. 31, Ex. 2 at 4, pp. 10-11].

---

[2] The agreement, in pertinent part, states:

In the case of an employee's non work-related illness or injury, or compensable injuries or occupational disease, a leave of absence will be granted automatically for the full period of regular temporary disability, up to a maximum of one (1) year for the same injury or disease.  Reinjury, relapse, or aggravation shall not renew or extend the one-year maximum granted herein.  Additional time may be considered on a case by case basis upon the mutual consent of the company and the union.

[Dkt. No. 28, Ex. 5 at 3].

Garza received two pieces of correspondence after the May 21st deadline.  On May 24, 2004, Garza received a fax from Vazquez's treating physician, Dr. Mark Wengrovitz, stating that due to Vazquez's surgery he would be out of work for an "undetermined" period of time.  [Dkt. No. 28, Ex. 9 at 3].  Then on May 25, 2004, Garza received a letter from Vazquez's son, Mario A. Vazquez, informing Garza that Vazquez wished to remain employed until a future determination was made by Vazquez or his doctors "whether he will resign or return to work."  [Dkt. No. 28, Ex. 10 at 2].

Vazquez's leave expired May 29, 2004.  [Dkt. No. 28, Ex. 12 at 2].  He did not return to work after his leave expired.  [Dkt. No. 28, Ex. 5, at 5].

On June 9, 2004, Garza telephoned Mario Vazquez and informed him that he could not extend Vazquez's leave until some time in the future.  [Dkt. No. 28, Ex. 5 at 4].  Garza told Mario Vazquez that Dr. Wengrovitz's faxed letter was not sufficient to extend Plaintiff's leave because the doctor did not indicate when Plaintiff would be available to return to work.  [Dkt. No. 28, Ex. 11 at 2].  Responding to Garza, Mario Vazquez suggested that his father needed another six months to heal and see how the doctor felt about him returning to work.  *Id.*  Garza stated he would talk with his management to see if Vazquez's request for an extension could be granted.  *Id.*

On June 10, 2004, Garza sent another letter to Vazquez.  The letter informed Vazquez that his one year leave had already expired on May 29th, and that the documents Vazquez provided indicated he needed an additional six months of leave.  [Dkt. No. 21, Ex. 12 at 2].  The letter requested that Vazquez provide LTM information or medical probability that may release him from full time work duty status.  *Id.*  Garza further stated that he had scheduled a meeting for June 23, 2004, to evaluate Vazquez's request to extend his leave.  *Id.*  Vazquez was encouraged to attend the meeting.  *Id.*

3

Vazquez alleges that due to his surgery, he was unable to attend the June 23rd meeting.  [Dkt. No. 1 at 3].  He also alleges he requested that the meeting be rescheduled.  *Id.*

On June 23, 2004, Dr. Wengrovitz's office faxed a letter to Garza.  The letter, signed by Dr. Wengrovitz, states:  "I am not sure when [Vazquez] will return to work and it may be as long as six months.  I will keep you posted as to a closer time in which he will be able to return to work."  [Dkt. No. 28, Ex. 13 at 3].  Garza interpreted the faxed letter to mean that Dr. Wengrowitz did not know whether Vazquez could return to work and that it would take up to six months for him to make that determination.  [Dkt. No. 28, Ex. 5 at 5].

On July 8, 2004, Garza sent Vazquez a letter informing him that LTM was terminating Vazquez's employment.  [Dkt. No. 28, Ex. 14 at 2].  Specifically, Garza stated that due to business necessity LTM had to fill Vazquez's position, and that the medical reasons, provided through Dr. Wengrovitz's faxed letters, did not indicate a reasonable recovery time that would release Vazquez to full-time work duty status.  *Id.*

## B.  Procedural History

On February 9, 2005, Vazquez filed a charge of discrimination with the Texas Commission of Human Rights.  [Dkt. No. 1, Ex. 2].  He charged:  "I feel when I was terminated from my employment, it was done so because of my age, 68 years old, in violation of [the ADEA] and also discriminated against my disability under [the ADA]."  *Id.*

On March 21, 2006, the U.S. Equal Employment Opportunity Commission ("EEOC") dismissed Vazquez's case.  [Dkt. No. 1, Ex. 3].  The EEOC determined it was unable to conclude that the information it had obtained through its investigation established violations of statutes.  *Id.* In also informed Vazquez of his right to file a civil lawsuit against LTM within 90 days.  *Id.*

4

On June 19, 2006, Vazquez filed his original complaint with this Court.[3]  [Dkt. No. 1]. Vazquez included two causes of action.  Vazquez first claims LTM inappropriately considered Vazquez's age, over 40, as a motivating and/or substantial factor in terminating him, which was in violation of the ADEA.  *Id.* at 4.  Vazquez also alleges he suffers a disability, i.e., diabetes, and that his disability was a motivating and/or substantial factor for LTM's decision to terminate his employment.  *Id.* at 5.  He further pleads he was terminated when he requested an accommodation for his disability in the form of extended leave under the Family and Medical Leave Act ("FMLA"). *Id.*

On May 2, 2007, LTM filed a motion for summary judgment.  [Dkt. No. 28].  Vazquez filed a response on May 22, 2007.  [Dkt. No. 31].

## II. DISCUSSION

LTM raises several summary judgment arguments.  First, LTM contends Vazquez did not properly report all claims of discrimination in his charge to the EEOC and thus failed to exhaust his administrative remedies.  [Dkt. No. 28 at 6-12].  Second, LTM alleges Vazquez was not eligible for FMLA leave.[4]  *Id.* at 12-13.  Third, LTM asserts Vazquez cannot establish a prima facie case of discrimination under the ADA and ADEA. *Id.* at 13-23.  Finally, LTM contends it has produced a

---

[3] Vazquez premised jurisdiction as federal question. [Dkt. No. 1 at 2].  He alleges his claims fall under the Age Discrimination in Employment Act of 1967, and thus Title 28, United States Code, Section 1331 confers jurisdiction upon this Court.  *Id.*  The Court agrees.

[4] LTM claims Vazquez is barred from pursuing a retaliation claim grounded on a denial of FMLA leave.  Vazquez's complaint appears to assert a claim hinging on the FMLA. [Dkt. No. 1 at 5].  However, in his response to LTM's motion for summary judgment, Vazquez concedes he "has not asserted a claim of discrimination under the FMLA in his Original Complaint.  He set forth two counts of discrimination:  ADEA and ADA discrimination."  [Dkt. No. 31 at 17 n.110].  Because of Vazquez's concession, LTM is **GRANTED** summary judgment as to this particular issue.  The Court will therefore not discuss any claims related to the FMLA in the body of the opinion.

5

legitimate non-discriminatory reason for terminating Vazquez's employment. *Id.* at 23. After setting forth the summary judgment standard, each of LTM's contentions will be considered in turn.

### A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c).

The party seeking summary judgment bears the initial burden.  To satisfy its burden the moving party must inform the court of the basis for its motion and identify those portions of the record "which [the moving party] believes demonstrates the absence of a genuine issue of material fact" with respect to issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 327 (1986); *Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003).  The movant meets its initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998).  While a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), the moving party need not negate the elements of the nonmovant's case. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

Once a moving party has met its burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, [rather] the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). "The nonmovant's burden is not satisfied by 'some metaphysical doubt as to material facts,' conclusory

allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or 'only a scintilla of evidence.'"  *P. Borgades-Account B, L.P. v. Air Products, L.P.*, 369 F. Supp. 2d 860, 865 (E.D. Tex. 2004)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).  Instead, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (quoting Fed.R.Civ.P. 56(e)).  There is no issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the nonmovant.  *Id.*  Also, if an adverse party completely fails to make a showing sufficient to establish an essential element of that party's case on which it will bear the burden of proof at trial, then all other facts are rendered immaterial and the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 322-23.

The nonmovant's evidence is to be believed with all inferences drawn and all reasonable doubts resolved in its favor.  *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n.5 (1990)(citing *Anderson*, 477 U.S. at 255).  The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts[,]"  *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999), but only reasonable inferences will be drawn from the evidence in favor of the nonmoving party, *Eastman Kodak Co. v. Image Tech, Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992).

The Court begins with LTM's contentions that Vazquez failed to plead and thus exhaust his administrative remedies.

### B.  Exhaustion of Administrative Remedies

Before a plaintiff may file a civil action in federal court under the ADA, he or she must first exhaust his or her administrative remedies.  *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996)(per curiam).  This, of course, includes filing a charge of discrimination with the EEOC.  *Id.*

In this case, LTM contends Vazquez failed to exhaust his administrative remedies.  LTM alleges Vazquez did not raise any facts or complaints regarding diabetes disability during the EEOC investigation that would have caused the EEOC to investigate diabetes as the source of disability discrimination.  [Dkt. No. 28 at 9-10].  LMT concludes Vazquez is therefore barred from pursuing the diabetes claim in this Court.

Vazquez, in his response, contends his alleged failure to specifically plead "diabetes" in his original charge does not prevent his claims from being addressed because: (i) courts broadly construe EEOC charges; (ii) Vazquez's claims "reasonably" grow out of the original charge of discrimination; and (iii) LTM would not be prejudiced.  [Dkt. No. 31 at 20-22].

"As a general proposition, it is well established that the scope of an EEOC complaint should not be strictly interpreted."  *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970)(quotation marks and citation omitted); *see Clark v. Kraft Foods*, 18 F.3d 1278, 1280 (5th Cir. 1994)("[L]iberal construction [is] accorded EEOC charges, especially those by unlawyered complainants . . . ." (citation omitted)).  "[T]he 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Sanchez*, 431 F.2d at 466.  "The scope of inquiry is not, however, limited to the *exact* charge brought to the EEOC."  *Young v. City of Houston*, 906 F.2d 177, 180 (5th Cir. 1990).  As long as the EEOC investigation could reasonably be expected to grow out of the initial charge,

8

the requirement for exhaustion of administrative remedies is satisfied.  *Fine v. GAF Chem. Corp.*,
995 F.2d 576, 578 (5th Cir. 1993).

Here, Vazquez indicated in his EEOC complaint that he had been discriminated against based
on his "disability."  [Dkt. No. 1, Ex. 2].  He indicated this by marking the disability box on the
charge form.  *Id.*  In the factual narrative of the charge, Vazquez further explained he had been
"discriminated against my disability under the [ADA]" and that LTM "simply wanted to get rid of
me because of my age and my *disability*."  *Id.* (emphasis added).  Based on the foregoing, the Court
finds that when the EEOC charge complains of "disability" discrimination, as Vasquez's did, it can
reasonably be expected to produce an investigation into Vazquez's diabetes.  That Vazquez did not
state his exact disability as diabetes does not change the outcome.  *See Young*, 906 F.2d at 180.
After all, Vazquez's EEOC charge should not be strictly interpreted, but rather liberally construed.
*Clark*, 18 F.3d at 1280; *Sanchez*, 431 F.2d at 465.  The Court thus concludes that Vazquez's EEOC
charge presented a sufficient predicate upon which one can reasonably expect the agency to
investigate Vazquez's alleged diabetes disability.  Therefore, LTM's administrative exhaustion
argument fails.  *See Fine*, 995 F.2d at 578.

### C.  ADA Claims

The ADA provides that "no covered entity shall discriminate against a qualified individual
with a disability because of the disability of such individual in regard to job application procedures,
the hiring, advancement, or discharge of employees, employee compensation, job training, and other
terms, conditions and privileges of employment."  42 U.S.C. § 12112(a).

A party may establish a claim of discrimination under the ADA in two ways.  A claimant can
either present direct evidence of discrimination or use the indirect method of proof set forth in

9

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Daigle v. Liberty Life Ins. Co.*, 70

F.3d 394 (5th Cir. 1995).  To establish a prima facie case of intentional discrimination under

*McDonnell Douglas*, a plaintiff must show that he or she: (1) was disabled; (2) was qualified for the

job; (3) was subject to an adverse employment action; and (4) was replaced by a non-disabled person

or treated less favorably than non-disabled employees.  *Daigle*, 70 F.3d at 396.  If the plaintiff

establishes a prima facie case, the employer must then show a legitimate, non-discriminatory reason

for its action.  *Id.*  "While the employer need not prove the legitimate reason, it must produce some

evidence to support [its reason]."  *Id.* (citation omitted).  Once the employer articulates such a

reason, the burden shifts back to the plaintiff to establish by a preponderance of the evidence that the

reason was merely a pretext for discrimination.  *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276,

280 (5th Cir. 2000).

In the instant case, LTM asserts Vazquez cannot establish a prima facie case under the ADA.

LTM focuses on the first and second elements of the *McDonnell Douglas* scheme.  According to

LTM, Vazquez did not (or does not) have a "disability," and Vazquez was not a "qualified

individual" for the bus driver position.  [Dkt. No. 28 at 13].  LTM has waived any argument relating

to the third and fourth elements by failing to brief them.  *See Rodriguez v. ConAgra Grocery Prods.*

*Co*, 436 F.3d 468, 474 n.21 (5th Cir. 2006)(citations omitted).  Therefore, the instant dispute turns

on the first and second elements of *McDonnell Douglas*.  Because Vazquez, as a threshold

requirement in an ADA claim must establish that he has a disability, *Waldrip v. Gen. Elec. Co.*, 325

F.3d 652, 654 (5th Cir. 2003), that is considered first.

10

### 1. Did Vazquez establish he was disabled?

The ADA defines a "disability" in three ways: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.  42 U.S.C. § 12102(2).

LTM asserts Vazquez cannot meet definition (A) or (C).  [Dkt. No. 28 at 13, 15].  To address both of these contentions the Court begins with the disability definition of subsection (A).

### a.  Did Vazquez show he had a physical or mental impairment that substantially limited one or more of the major life activities?

In addressing "disability" under definition (A), the pertinent inquiries are whether Vazquez had a physical or mental impairment, and, if so, whether it substantially limited one or more of his major life activities.  *See* 42 U.S.C. § 12102(2)(A); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 481 (1999)("[W]e turn first to the question whether petitioners have stated a claim under subsection (A) of the disability definition, that is, whether they have alleged that they posses a physical impairment that substantially limits them in one or more major life activities." (citing 42 U.S.C. § 12102(2)(A))).  Here, the parties agree that Vazquez's diabetes constitutes an impairment.  [Dkt. No. 28 at 13; Dkt. No. 31 at 7-10].  Therefore, the dispute is whether Vazquez's diabetes substantially limits him in one or more major life activities.

"Major life activities" include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.  *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001)(citing 29 C.F.R. § 1630.2(i)); *but see Sutton*, 527 U.S. at 492 (explaining there may be conceptual difficulty in defining major life activities to include work and "[a]ssuming without

deciding that *working* is a major life activity . . . ." (emphasis added)).  The EEOC's regulations define "substantially limited" as meaning:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or

> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity.

29 C.F.R. § 1630.2(j)(1).

In *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999), the Supreme Court held that the threshold inquiry whether an individual is disabled is analyzed on an individual basis.  The Court concluded that a diabetic is not per se disabled but must demonstrate that his condition substantially limits one or more of his major life activities.  *Id.* at 482-83.  The Court emphasized that "[a] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity."  *Id.*

LTM argues Vazquez's diabetes does not substantially limit a major life activity because his diabetes is mitigated by taking oral medication and insulin.  [Dkt. No. 28 at 14].  Responding to LTM's motion for summary judgment, Vazquez initially concedes that he can maintain his blood sugar levels at a homeopathic range by injecting himself with insulin and maintaining a strict diet. [Dkt. No. 31 at 8].  Vazquez then contends that his condition substantially limits several major life activities:  walking, thinking, eating/drinking, caring for himself, and working.  *Id.* at 8-10.

As a threshold issue, the Court agrees with LTM.  Because Vazquez's impairment is "corrected" by insulin and diet, he does not have an impairment that presently "substantially limits" a major life activity.  *See Sutton*, 527 U.S. at 48-83; *id.* at 83 ("To be sure, a person whose physical

12

or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not 'substantially limit' a major life activity.").  Notwithstanding this conclusion, the Court will indulge Vazquez's argument that his impairment substantially limits several life activities due to the individualized assessment mandate by *Sutton*.  The Court first examines the effect Vazquez's diabetes has on the major life activity of walking.

### i.  walking

In June of 2003, Vazquez, presumably due to diabetes, had a toe amputated due to poor circulation in his foot and gangrene.  [Dkt. No. 31, Ex. 2 at 3, p. 9].  Vazquez states in his response that because of the amputation he must wear special footwear for the rest of his life in order to provide "mitigated" mobility.  [Dkt. No. 31 at 8].  The evidence shows, however, that Vazquez's mitigated mobility is not substantial.

In his deposition, Vazquez stated that the amputation did not affect his ability to maintain his balance; that he does not walk with a limp due to the special footwear; and that he does not know whether he would have great difficulty walking without his custom-made shoe.  [Dkt. No. 31, Ex. 10 at 11-12].  After reviewing Vazquez's deposition, the Court concludes that "although [Vazquez might] experience[] some impairment to h[is] ability to walk, it does not rise to the level of a substantial impairment as required by the ADA . . . ."  *Talk v. Delta Airlines, Inc.*, 165 F.3f 1021, 1025 (5th Cir. 1999); *id.* (finding moderate difficulty while walking does not rise to the level of a disability and explaining plaintiff had conceded special orthopedic shoe allowed her to maintain full mobility).

13

### ii.  thinking

Vazquez next claims his diabetes affects his ability to think.  [Dkt. No. 31 at 8].  However, Vazquez failed to present any binding authority suggesting that "thinking" is a major life activity. *See Aldrup*, 274 F.3d at 286 (enumerating major life activities, and not including "thinking").  The Court is cognizant that some Circuit Courts have found that thinking is a major life activity.  *See Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1061 (9th Cir. 2005); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 307 (3d Cir. 1999).  Nevertheless, the Court concludes the evidence examined in *Head* and *Taylor* does not equate to the testimony cited by Vazquez because Vazquez concedes that his ability to think would only be affected if he deviated from his daily injections of insulin and strict diet.  *See Sutton*, 527 U.S. at 482 ("A 'disability' exists only where an impairment 'substantially limits' a major life activity, not where it 'might,' 'could,' or 'would' be substantially limiting if mitigating measures were not taken.").

### iii.  eating/drinking

Vazquez also contends diabetes affects his ability to enjoy the simple pleasure of eating and drinking because he must monitor every meal in order to avoid foods and drinks containing sugar. [Dkt. No. 31 at 9].  Again Vazquez failed to provide any binding authority that holds eating and drinking are major life activities.  The Court will however assume, for the sake of thoroughness, that these are major life activities and will focus on the cited evidence to determined whether Vazquez has shown that his diabetes substantially limits his ability to eat and drink.

In his declaration, Vazquez declared that his doctors recommended that he avoid foods like bread and flour tortillas and drinks containing sugar.  [Dkt. No. 31, Ex. 10 at 5].  Mario Vazquez avered his father must avoid foods, like bread, and regular Coke.  [Dkt. No. 31, Ex. 13 at 22, 23].

He, however, explains his father uses Sweet-N-Low as a sugar substitute, buys, and presumably eats, sugar-free pies, and drinks diet Coke. *Id.* at 22-23. Under these set of circumstances, there is very little to suggest that Vazquez is "significantly restricted" in eating and drinking as compared to "the average person in the general population." 29 C.F.R. § 1630.2(j). "Many people have to monitor their food intake for health and lifestyle reasons, and avoiding 'mostly sugars' is not 'significantly restricted' for this purpose. If it were, all insulin-dependent diabetics would have a 'disability' for ADA purposes, and we know from *Sutton* that they do not." *Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1156 (11th Cir. 2005)(citing *Sutton*, 527 U.S. at 471). Accordingly, the Court concludes Vazquez failed to show that his diabetes "substantially" limits the major life activities of eating and drinking. *See Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 565 (1999)("[The ADA] concerns itself only with limitations that are in fact substantial.").

### iv.  caring for oneself

Vazquez then alleges he is substantially limited in his ability to care for himself and must rely heavily on his wife and family to maintain and monitor his diabetes. [Dkt. No 31 at 9]. The cited evidence shows otherwise. When Vazquez was asked "[d]o you depend on your wife to help you maintain or monitor your diabetes?[,]" he answered "Yes, I always show it to her so she's – so she won't tell me that I had 250 and I told her it was 140. . . ." [Dkt. No. 31, Ex. 10 at 11]. The questioning continued, "So it's fair to say that you depend on your wife a great deal?" *Id.* Vazquez responded, "Yes. I show her everything so she knows that I am not lying." *Id.* Based on the cited evidence, it appears Vazquez does not depend or heavily rely on his wife, but rather demonstrates that Vazquez shows his wife his blood results indicating his sugar level to confirm that he is being truthful. *See Arredondo v. Gulf Bend Ctr.*, No. H-06-1580, 2007 U.S. Dist. LEXIS 23470, at *19

15

(S.D. Tex. Mar. 30, 2007)("[It is] essential for an ADA plaintiff to develop a detailed factual record concerning the substantial limitations on his major life activities.  Seemingly reasonable assumptions and generalizations will not suffice." (citations omitted)).  Accordingly, Vazquez failed to show his diabetes substantially limits the major life activity of caring for oneself.

### v.  working

Vazquez, lastly, claims he is substantially limited in his ability to work.  [Dkt. No. 31 at 10]. That claim fails because Vazquez did not show how his impairment substantially limits his ability to work, nor does he offer specific facts to support a finding of substantial limitation.  Merely stating "for the same reasons set forth above" is not enough.  *See* FED.R.CIV.P. 56(e)("[A]dverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."); *Matsushita Elec. Indus.*, 475 U.S. at 587.  The Court therefore finds that Vazquez has failed to set forth evidence demonstrating that his diabetes substantially limits the major life activity of working.

In short, the Court concludes that Vazquez failed to satisfy he has a disability under definition (A) of § 12102(2).  The Court considers next whether Vazquez showed he was "regarded as" having an impairment under definition (C) of the same statute.

### b.  Did Vazquez show he was "regarded as" having an impairment?

As stated earlier, the ADA's definition of "disability" includes individuals who are "regarded as" having an impairment that substantially limits one or more of the major life activities of such individual.  *See* § 12102(2)(C); *Sutton*, 527 U.S. at 489.[5]  A plaintiff is "regarded as" being disabled

---

[5] As to definition (C) of § 12102(2), the Supreme Court explained,

Under subsection (C), individuals who are "regarded as" having a disability are disabled within the meaning of the ADA.  See § 12102(2)(C).  Subsection (C) provides that having a disability includes "being regarded as having," § 12102(2)(C),

if he or she:  (1) has an impairment that is not substantially limiting but which the employer perceives as substantially limiting; (2) has an impairment that is substantially limiting only because of the attitudes of others; or (3) has no impairment but is perceived by the employer as having a substantially limiting impairment.  *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 657 (5th Cir. 2003)(citation omitted). In this case, Vazquez pleads the first kind of "regarded as" disability. [Dkt. No. 31 at 31 n.183].   Accordingly, Vazquez has to show that at the time LTM terminated his employment (1) his diabetes did <u>not</u> actually substantially limit him in a major life activity, and (2) LTM nonetheless perceived his diabetes to be substantially limiting.  *See Rodriguez v. ConAgra Grocery Prods. Co*, 436 F.3d 468, 475 (5th Cir. 2006).

LTM tinkered with the idea that Vazquez cannot prove he was "regarded as" disabled.  [Dkt. No. 28 at 15].  Tinkered is all that LTM did.  LTM did not, for example, cite to any binding authority or provide any guidance as to what prong of the "regarded as" law Vazquez could not prove.

Vazquez's response is similarly wanting.  Vazquez, as an alternative argument, pleads that he was regarded as disabled by LTM.  However, Vazquez's argument fails for several reasons.  First, in some parts of his response, Vazquez claims his impairment was substantially limiting.  [Dkt. No.

---

"a physical or mental impairment that substantially limits one or more of the major life activities of such individual," § 12102(2)(A).  There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual – it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.  These misperceptions often result from stereotypic assumptions not truly indicative of individual ability.

*Sutton*, 527 U.S. at 489 (quotation marks and citations omitted).

31 at 7-10, 25-26]. Now, under the "regarded as" disabled law, Vazquez claims that his impairment is "not" substantially limiting. Either Vazquez's impairment is substantially limiting or it is not; Vazquez cannot have it both ways. *See Rodriguez*, 436 F.3d at 476 (concluding plaintiff had adduced sufficient evidence to establish his diabetes did "not" substantially limit him in a major life activity).

Second, Vazquez's conclusory statements that LTM "perceived" Vazquez as being unable to perform any job, and that Vazquez submitted competent summary judgment evidence that LTM "regarded" him as disabled, [Dkt. No. 31 at 31, 32], are not enough to create a factual dispute, *see* FED.R.CIV.P. 56(e); *Matsushita Elec. Indus.*, 475 U.S. at 587, since a plaintiff must show that the employer perceived a disability that substantially limited the plaintiff in one or more major life activities. *See Rodriguez*, 436 F.3d at 475; *Waldrip*, 325 F.3d at 657. Vazquez has not shown this. Therefore, the Court concludes Vazquez failed to show he was "regarded as" having an impairment under definition (C) of § 12102(2).

To conclude with this section, Vazquez failed to satisfy the first prong of his ADA claim. Vazquez failed to show he was disabled.[6] The Court will nevertheless proceed with the second element of the prima facie case.

---

[6] Vazquez also claims he satisfied definition (B) of § 12102(2). He alleges he presented evidence that he had a record of disability. [Dkt. No. 31 at 32]. In order to prevail on a claim of discrimination based on a record of an impairment, the plaintiff must show both that (1) the plaintiff has a record or history of impairment; and (2) the impairment limits a major life activity. *Blanks v. Southwestern Bell Commc'ns, Inc.*, 310 F.3d 398, 402 (5th Cir. 2002)(citation omitted). "While there are sufficient facts to allege that [Vazquez] had a record of impairment, he may not qualify as disabled under the 'record of' prong because [as discussed in *supra* Part II.C.1.a.] he failed to raise a genuine issue of fact to show the he was substantially limited in a major life activity." *Id.*

### 2.   Did Vazquez establish he was qualified for the job?

The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without a reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 1211(8).  A plaintiff may avoid summary judgment on the issue of whether he is a qualified individual by showing:  (1) that he could perform the essential functions of the job despite his disability, or (2) that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job.  *Turco v. Hoechst Celanese Chem. Group*, 101 F.3d 1090, 1093 (5th Cir. 1996).

### a.   Did Vazquez show he could have performed the essential functions of the job in spite of his disability?

LTM argues Vazquez could not perform the essential functions of a bus driver at the time of his termination because he was unavailable for work.  [Dkt. No. 28 at 17].  Vazquez's response does not squarely address LTM's contention.  Rather, Vazquez argues that he is qualified for the job because he met the job application requirements back in 1977.  [Dkt. No. 31 at 3, 26].  Vazquez's stance misses the mark.

Vazquez failed to show he could perform the essential functions of the job in spite of his diabetes at the time of his termination.  Vazquez was terminated on July 8, 2004.  [Dkt. No. 28, Ex. 14 at 2].  The evidence shows he was unavailable for work at that time.  For instance, Vazquez acknowledges that due to his surgery he was unable to attend the June 23, 2004, meeting scheduled by Garza.  [Dkt. No. 1 at 3].  His treating physician through letter stated that due to Vazquez's surgery he would be out of work for an "undetermined" period of time, [Dkt. No. 28, Ex. 9 at 3], and that he was not sure when Vazquez would return to work.  [Dkt. No. 28, Ex. 13 at 3].  In fact,

19

Vazquez remained unavailable for work at least until September of 2004.[7]  [Dkt. No. 28, Ex. 25 at

4].  "Because [Vazquez] could not attend work, he is not a 'qualified individual with a disability'

under the ADA . . . [since] an essential element of any . . . job is an ability to appear for work . . . and

to complete assigned tasks within a reasonable period of time."  *Rogers v. Int'l Marine Terminals,*

*Inc.*, 87 F.3d 755, 759 (5th Cir. 1996)(internal quotation marks and citations omitted).  Accordingly,

the Court concludes Vazquez failed to show he could perform the essential functions of the job in

spite of his disability.

### b.  Did Vazquez demonstrate that a reasonable accommodation of his disability would have enabled him to perform his job?

"A wrongful termination claim under the ADA is not properly analyzed under a reasonable

accommodation theory unless an employer is shown to have terminated a qualified individual with

a disability in order to avoid accommodating that employee's impairment at the workplace."  *Burch*

*v. Coca-Cola Co.*, 119 F.3d 305, 314 (5th Cir. 1997).  As already discussed above, Vazquez failed

to show he had a disability under the ADA or that he was a qualified individual.  The Court will

nevertheless explore the issue whether Vazquez can show that LTM terminated him in order to avoid

accommodating his impairment at the workplace.

Here, Vazquez informed LTM that he could probably return to work in six months [Dkt. No.

28, Ex. 5 at 4], and Vazquez's son told Garza that his father "wanted reconsideration for another six

months in order to allow [his] dad to heal and see how the doctor felt about him returning to work."

[Dkt. No. 28, Ex. 11 at 2].  It is undisputed that there was an exchange of communications between

---

[7] Dr. Mark Casillas, in a letter written to the EEOC, states, "My patient Cesar Vazqez . . . was under treatment for a left heel ulcer between January 27, 2004 through September 28, 2004.  The wound impaired [Vazquez] from standing and walking as well as driving.  The wound precluded [Vazquez] from working as a bus driver during that period of time."  [Dkt. No. 28, Ex. 25 at 4].

Vazquez (and his son) and LTM relating to the requested extension. It is also undisputed that LTM attempted to accommodate Vazquez by requesting medical documentation supporting the extended leave request.[8] [Dkt. No. 28, Ex. 8, Ex. 11, Ex. 12]. Vazquez failed to provide the requested information, and was thus terminated. [Dkt. No. 28, Ex. 14 at 2]. Under these circumstances, the Court finds Vazquez did not show LTM terminated him in order to avoid accommodating his impairment. *See Creswell v. Deere & Co.*, No. 3:96-CV-1392-P, 1997 U.S. Dist. LEXIS 22890, at *30 (N.D. Tex. Oct. 20, 1997)("The [ADA] does not require employers to provide any accommodation that the employee requests. Indeed, the employer must do no more than afford the disabled employee an accommodation that is reasonable." (citation omitted)); *see, e.g., Rogers*, 87 F.3d at 760 (explaining reasonable accommodation does not require an employer to wait indefinitely for the employee's medical conditions to be corrected).

In short, Vazquez failed to present a prima facie case of discrimination under the ADA. He failed to show he was disabled and that he qualified for the job. *See supra* Part II.C.1, 2. Assuming

---

[8] The Court notes the summary judgment evidence shows that Vazquez did not fully appraise LTM regarding his insulin dependency. In his deposition, Vazquez testified he did not inform LTM or co-workers that he was taking insulin while employed by LTM. [Dkt. No. 28, Ex. 27 at 7]. Vazquez explained he did not alert anybody "[b]ecause it was something personal . . . It was personal. I didn't have any reason to tell anybody. *Id.* Additionally, Garza avered,

> In the course of making a decision about the Plaintiff's employment in 2004, I did not become aware that the Plaintiff had been insulin dependent since 2001. Although I was generally aware that the Plaintiff was diabetic, I was unaware that diabetes interfered with Plaintiff's job performance as a driver. The Plaintiff did not disclose any medical issue associated with his diabetes during the termination process and did not request any job accommodation because the only issue was whether we should extend his leave pursuant to the collective bargaining agreement.

[Dkt. No. 28, Ex. 8 at 6]. Vazquez attempts to circumvent this evidence by arguing that LTM had years of prior notice showing that Vazquez suffered form diabetes. [Dkt. No. 31 at 29]. However, none of the cited evidence mentions Vazquez's insulin dependency.

arguendo that Vazquez had presented a prima facie case, as discussed below, LTM presents a legitimate, non-discriminatory reason for the termination.

### 3. Were LTM's reasons for terminating Vazquez legitimate and non discriminatory?

LTM claims Vazquez was terminated because he failed to return to work after his one year leave expired and failed to provide sufficient medical information regarding his inability to return to work after several requests had been made.  [Dkt. No. 28 at 21].  This is supported by the summary judgment evidence.

The evidence shows Garza informed Vazquez on May 4, 2004, that his one year leave would expire on May 29, 2004.  [Dkt. No. 28, Ex. 8 at 2].  Garza further informed Vazquez that if Vazquez could not return to work, he needed to provide medical information about when he could return to work.  *Id.*  Garza set a May 21st deadline for Vazquez to provide the requested information.  *Id.* Vazquez missed the deadline because on May 24, 2004, Garza received a letter from Vazquez's doctor stating that Vazquez had undergone surgery and would be out of work for an "undetermined" period of time.  [Dkt. No. 28, Ex. 9 at 3].  Vazquez's son then wrote a letter to Garza stating that Vazquez wished to remain employed until a future determination was made by Vazquez or his doctors "whether he will resign or return to work."  [Dkt. No. 28, Ex. 10 at 2].  Subsequently, Garza made a courtesy call to Vazquez's son.  Mario Vazquez's version of the conversation is that "[Garza] indicated that the doctor's letter [Garza] received was not sufficient to make an exception to extend the leave because the doctor did not indicate when [Vazquez] would be available to return to work . . . ."  [Dkt. No. 28, Ex. 11 at 2].

22

The summary judgment evidence further shows that Vazquez did not return to work after his leave expired.  [Dkt. No. 28, Ex. 5, at 5].  It also shows that Garza contacted Vazquez after his leave expired and requested additional information about his return date, and scheduled a meeting to discuss Vazquez's leave petition.  [Dkt. No. 21, Ex. 12 at 2].  Vazquez did not show up to the meeting.  [Dkt. No. 1 at 3; Dkt. No. 28, Ex. 5 at 5; Dkt. No. 31, Ex. 7 at 27 p. 102].  He did however provide a letter from his doctor stating, "I am not sure when [Vazquez] will be able to return to work and it may be as long as six months.  I will keep you posted as to a closer time in which he will be able to return to work."  [Dkt. No. 28, Ex. 13 at 3].  Given the lack of detail in the doctor's letter, Garza interpreted the doctor's letter to mean that he, the doctor, did not know whether Vazquez could return to work and that it would take up to six months for him to make that determination.  [Dkt. No. 28, Ex. 5 at 5].

In deciding to terminate Vazquez, Garza declared he took several facts into consideration.  Garza's declaration, in pertinent part, states,

> The Plaintiff did not return to work after his leave of absence expired.  The limited evidence presented by the Plaintiff did not indicate whether he could return to work by a date certain or that he could return at all in the future. . . . My understanding was that the Plaintiff had to go through a recovery period after surgery.  However, no physician could give assurances that the Plaintiff would return to work as Mario A. Vazquez had represented to me.

[Dkt. No. 28, Ex. 5 at 5-6].

In short, the summary judgment evidence shows that at no time prior to the expiration of Vazquez's one year leave did he provide, as LTM requested, sufficient medical information about when and whether he could return to work.  Even after his original leave expired, LTM asked Vazquez to provide medical information to support his leave request and scheduled a meeting to

discuss Vazquez's situation.  Vazquez was a no show and the information he provided was again deemed insufficient.  Under these facts, the Court finds LTM's reasons for terminating Vazquez were legitimate and non-discriminatory.  *See Daigle*, 70 F.3d at 396 ("While the employer need not prove the legitimate reason, it must produce some evidence to support [its reason]."); *see, e.g., Odom-Alvarado v. Tom Benson Imps., Inc.*, No. SA-05-CA-0221 FB, 2006 U.S. Dist. LEXIS 94225, at *20 (W.D. Tex. Dec. 28, 2006)(concluding summary judgment evidence indicated defendant terminated plaintiff because she failed to return to work on the first scheduled work day after her leave expired).

To conclude the ADA section, Vazquez failed to establish a prima facie case under the ADA. Even if Vazquez could establish a prima facie case, LTM met its burden of providing non-discriminatory reasons for its conduct.[9]  Accordingly, even when viewed in the light most favorable to Vazquez, the evidence does not support any triable issue of fact, and LTM's motion for summary judgment is **GRANTED** as to the ADA claim.  *See Celotex*, 477 U.S. at 322-23 (explaining that if an adverse party completely fails to make a showing sufficient to establish an essential element of that party's case on which it will bear the burden of proof at trial, then all other facts are rendered immaterial and the moving party is entitled to summary judgment).

---

[9] Because Vazquez failed to establish a prima facie case under the ADA, and because LTM's reasons for his termination were deemed legitimate, non-discriminatory reasons for its action, the Court need not discuss pretext.  Even if the Court wanted to discuss pretext, Vazquez failed to brief this issue in its response.

### D. ADEA Claims

Under the ADEA it is unlawful for an employer to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals age. *Berquist v. Wash. Mut. Bank.*, No. 05-20956, 2007 U.S. App. LEXIS 16699, at *7 (5th Cir. July 12, 2007)(quoting 29 U.S.C. § 623(a)(1))(quotation marks omitted). To establish a prima facie case of age discrimination, a plaintiff must demonstrate: (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age. *Id.* (quotation marks and citation omitted). If the plaintiff establishes a prima facie case, the defendant must then articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff. *Id.* at *28. If the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reasons, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motives alternative). *Id.* (quotation marks and citation omitted).

The analysis by both parties relating to Vazquez's ADEA claim leaves much to be desired. In its motion for summary judgment, LTM contends that Vazquez cannot establish a prima facie case because he cannot show he was replaced by someone outside the protected class. [Dkt. No. 28 at 23]. According to LTM, "Plaintiff was replaced by Juan De Dios Lopez pursuant to the [collective bargaining agreement's] seniority system. Juan de Dios was 59 years old in July 2004. Accordingly, the Plaintiff cannot show that he was replaced by someone outside the protected class." *Id.* LTM's

argument is conclusory, and fails to take into account that Vazquez could also satisfy the fourth element of his ADEA claims by showing that he was replaced by someone younger, or otherwise discharged because of his age. *See Berquist*, 2007 U.S. App. LEXIS 16699, at *7.

Vazquez response is similarly wanting. It states, "Mr. Vazquez establishes his *prima facie* case by producing evidence that he was discharged and replaced by someone outside of the protected class, replaced by someone younger, and discharged because of his age." [Dkt. No. 31 at 35]. It cites to an alleged Exhibit Number 10 for his broad proposition, but after checking the records on file, the Court finds that Exhibit Number 10 does not state what Vazquez advances.

Due to the parties' poor briefing the Court cannot address whether Vazquez established a prima facie case of age discrimination. However, assuming Vazquez established a prima facie case, his claim would ultimately fail because as discussed in *supra* Part II.C.3., LTM articulated a legitimate, non-discriminatory reason for its decision to terminate Vazquez. *See Berquist*, 2007 U.S. App. LEXIS 16699, at *28; *Bienkowski v. American Airlines*, 851 F.2d 1503, 1507-08 (5th Cir. 1988)("The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personal managers."(citation omitted)). The Court further finds that Vazquez is unable to meet his burden of producing evidence from which a factfinder could reasonably find that LTM's reason for terminating his employment was pretext for age discrimination, or that age was an accompanying mixed motive. Accordingly, LTM's motion for summary judgment is **GRANTED** as to Vazquez's ADEA claim.

## III. CONCLUSION

In conclusion, for the enumerated reasons set forth herein, LTM's motion for summary judgment is GRANTED.  A final judgment will be issued under separate cover.

It is so ORDERED.

Signed this <u>16th</u> day of August, 2007, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**